Seawell, J.
delivered the opinion of a majority of the Court:
*257 From this case, it is evident, that the defendant acted as agent or trustee for the plaintiff; and that it was the understanding of the parties, he was to have nothing for his trouble. And it is equally clear that the agent accounted for the tobacco at 19s. (under pretence of having sold for that price) and afterwards sold for 24s. by which he gained 5s. in each hundred weight.
But it is attempted to be inferred from the statement, that the defendant was unable to sell the plaintiff’s tobacco for as much as 19s. and with a view of obliging him, substituted one of his own hogsheads that would command that price.—Without enquiring whether there is sufficient evidence of fraud in the conduct of the defendant to overrule the verdict, we are of opinion, that it is not in the power of an agent to become a purchaser himself, without leaving it also in the power of his principal to put an end to the sale; to prove which, 2 Brown. Ch. Rep. 400, 430, and 5th Ves. jun. 680, are very much in point. In the present case, the plaintiff has elected not to be bound by the exchange of the tobacco, which the defendant, in his representative character, thought fit to make with himself; and calls upon him to account for the full amount, and no more, of the tobacco he was entrusted to sell, and which he has sold; and this we think he is entitled to by law, and that therefore the rule for a new trial be made absolute.
Hall, J.
It seems, that the plaintiff, being indebted, did on the 22d March 1808, deliver to the defendant the tobacco in question, to be by him sold, and the money arising from the sale to be applied towards the discharge of his debts. In the course of a week after that time the defendant attempted to sell the tobacco in the town of Petersburg. The price of tobacco at that time, on the face of the note, as it is called (that is although it had passed inspection but the quality unknown to the purchasers,) was 18 shillings. Now had Kimble sold the tobacco, for that *258 price, no blame could have been attached to him. But his own tobacco having been opened and looked at commanded a better price. He therefore substituted this in the room of it, and sold it for 19 shillings, and applied the money towards the discharge of the plaintiff’s debts as he had agreed to do. At what time indeed does not appear, but there is no complaint on that score. In the month following he stated, when asked, that he had sold Mealor’s tobacco at 19 shillings. Now as he had not sold Mealor’s, but his own tobacco, avowedly a substitute for it, and that for a greater price than Mealor’s would have brought, and applied the money to Mealor’s use, he thereby, I think, made Mealor’s tobacco his own, and had it fallen in price after that time, he must have borne the loss. Let it be remembered, that there is no allegation or proof of fraud in the defendant.-Months after this time when Mealor’s debts were paid off, in the month of August, the tobacco was sold for 24 shillings, on a credit of four or five months, and it is alledged that the plaintiff is entitled to the difference between 19 and 24 shillings. If Kimble had kept his own tobacco, the probability is, that he might have sold it for more than 24 shillings. There can be no doubt, but he could have sold it for as much. And had he kept it and done so, things would have been precisely as they are, except that the plaintiff would be rather more than 14 shillings poorer than he is. It matters not that the tobacco sold for 24 shillings. Had it sold for 4 shillings only, the defendant must have borne the loss. Besides, it is well known that tobacco generally rises in price from the time it is inspected, at least for one year.—From this view of the case, rather than the defendant should be compelled to settle with the plaintiffs at 24 shillings per hundred, the plaintiff should return to the defendant 1 shilling per hundred, rating the tobacco at 18 shillings, the price it bore, when he substituted his own in the room of it and sold it for 19 shillings. But it is said that a trustee shall not become a purchaser, and the case of Fox v. Mac *259 kreth, 2 Brown, 400-Forbes v. Ross, 2 Brown 430-Whichcote v. Lawrence, 3 Ves. jr. 740-and Campbell v. Walker, 5 Ves. jr. 678-are relied upon. This position cannot be admitted except under certain limitations. I will examine it, but without believing that its solution is indispensably necessary to a decision in the present case, for I can view no other person as the real purchaser but G. Johnson.
In the first of the cases cited, the trustee who purchased, was decreed still to be a trustee, because he was guilty of a fraud in taking an undue advantage of the confidence reposed in him. That case is founded in reason and justice, and ought to be considered good authority, when a similar case shall occur. In the case of Forbes and Ross, no fraud was alleged against the trustee; but through a misapprehension of what his duty was, he took money to himself at four per cent which the testator had directed to be laid out at the most that could be got for it; giving as a reason for so doing, that the testator had loaned him money upon those terms during his life. It appeared also, that the trustee was a man of large property. This is a short, and certainly was a very plain case, for although there was no fraud alledged in the trustee, yet he became a gainer and his cestui que trust a loser by his conduct and it matters not whether such conduct was induced by fraud or happened through ignorance. In the case of Whichcote v. Lawrence, the Chancellor observes, “that it is not true, as “naked proposition, that a trustee cannot buy of the cestui “que trust,” and goes on to qualify it by further observing, “that it is plain, in point of equity, and a principle of “clear reasoning, that he who undertakes to act for another, “in any matter, shall not, in the same matter, act for himself; “therefore, a trustee to sell shall not gain any advantage by “being himself the person to buy; because he is not acting “with that want of interest, that total absence of temptation, “that duty imposed upon him, that he should gain no “profit to himself.” In the same case his Lordship observes, *260 that he does not recollect any case, in which the mere abstract rule came distinctly to be tried, abstracted from the consideration of advantage, made by the purchasing trustee; for unless advantage is made, the act of purchasing will never be questioned. From these authorities, then, it appears, that courts of equity interfere to declare trustees still to be trustees, where a benefit accrues to themselves, and a loss to their cestui que trust, in consequence of their having become purchasers. If, then, Kimble was the purchaser of the tobacco in question, that purchase is not shaken by the principles on which these cases profess to have been decided; because he gained no profit to himself thereby, and, instead of a loss, a benefit accrued to the plaintiff. It remains to be seen what bearing the case of Campbell and Walker will have on the case: In this case, the Master of the Rolls says, “there never was a rule that no trustee should buy,” but adds, that “if they do purchase bona fide, they purchase “subject to the equity, that if the cestui que trust come in "a reasonable time they may call to have the estate re-sold.” To examine this case by that rule, it must be kept in view, that Mealor, the plaintiff, was indebted to Cheek’s executors (most probably by judgment, but the case does not expressly say so) which debt, as well as the one due to Kimble, the defendant, front Moody, was to be discharged by the proceeds of the sale of the tobacco. This sale took place on the first day of April, 1808, in consequence of which those debts were promptly discharged. The month afterwards, this fact was disclosed by the defendant to the plaintiff, except that he said he had sold Mealor’s tobacco, when in fact he had sold his own. This literal deviation from truth, seems to give some umbrage, but it should be recollected, by way of extenuation, that two hogsheads of tobacco, made in the same neighborhood, of the same weight (or so nearly so as that that circumstance makes no difference) when offered for sale on the face (that is, without the quality of either being known,) are as much without ear marks as two *261 bushels of black-eyed peas out of the same field: and as far as there was any difference in the present case, the advantage was on the side of the defendants. Be that as it may, Mealor’s debts being paid, he remained satisfied two years and seven or eight months; for on the 15th day of November 1810, the writ in the present action issued. This, to be sure, is not made part of the case now before the court, but if it is of any importance, and does not appear, (and it seems to be so from the case last cited) why may not this court as well suppose that the plaintiff has been guilty of neglect in not bringing his suit in proper time, as that he has done so, and that the sooner, as it is more than five years ago that this transaction took place. Under all the circumstances of the case, connected with this lapse of time, and under a knowledge that his debts were discharged, by a sale of his tobacco, at 19 shillings per cwt. more than it was really worth, I cannot believe, that the Master of the Rolls, who laid down the rule, would have sustained a bill on behalf of the plaintiff, in case it had been brought before him. It seems, then, that a trustee may be a purchaser, and that his purchase will be protected, unless the cestui que trust applies in a reasonable time after notice, to have a re-sale. It would seem, then, agreeably to these rules, that, if Kimble became the purchaser of Mealor’s tobacco, by selling his own in lieu of it, he ought to be protected in that purchase. It is not denied, but that the sale was honestly made, and for a full price, and it would have been made equally so, if the plaintiff’s tobacco had been sold for 18 shillings. But let it be assumed, that Kimble had no right to substitute and sell his own tobacco, for Mealor’s, it follows, that Mealor’s tobacco was not sold at all; then Mealor’s debts were paid with Kimble’s own money, and had he brought an action against Mealor for the money, so advanced, he would have defended himself by proving the terms on which Kimble took the tobacco, and that the price of tobacco was 18 shillings, at the time Kimble ought to have sold it; and so it would have *262 been settled. There would be the same result, if the present action had been brought before Kimble sold to Clanton; and why that circumstance should make any difference, I am at a loss to see. Had not Mealor’s debts been paid off, the case would be very different; in that case, if tobacco had risen, after the time when Kimble ought to have sold, he ought to be answerable for such rise; or in case it had fallen, he ought to be answerable for what it would have bro’t when he ought to have sold it; or had his own tobacco been of less value than the plaintiff’s, and had he sold it as the plaintiff’s, the same consequences ought to follow. The only offence I can see that the defendant has been guilty of is, that he allowed the plaintiff a greater price for his tobacco, or sold his tobacco for a greater price than it was worth; for this I think he ought to be forgiven, and the rule for a new trial discharged.